IN THE MATTER OF THE PETITION OF THE LOCKPORT AND BUFFALO RAILWAY COMPANY FOR THE APPOINTMENT OF COMMISSIONERS TO SETTLE THE POINTS AND THE MANNER OF CROSSING THE TRACKS OF THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, ETC.

THE SAME, AS TO THE POINTS AND MANNER OF CROSSING THE TRACKS OF THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, AND THE BUFFALO AND NIAGARA FALLS RAILROAD COMPANY.

THE SAME, AS TO THE POINTS AND MANNER OF CROSSING THE TRACKS OF THE NIAGARA BRIDGE AND CANANDAIGUA RAILROAD COMPANY.

*Right of one company to cross the tracks of another — power of commissioners to control the manner of so doing — compensation for — how determined — chap. 140 of 1850, sec. 28, sub. 6.*

Subdivision 6 of section 28 of chapter 140 of 1850, authorizes one railroad to cross the tracks of another, and provides that if the two corporations "cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossing and connections, the same shall be ascertained and determined by commissioners to be appointed by the court."

*Held,* that the commissioners, in determining " the points and manner of such crossing and connections," were not to confine themselves solely to the question of the points at which, and the mechanical means and appliances by which the crossing was to be accomplished, but should determine all such particulars respecting the manner of crossing as would ordinarily be provided for by the contract between the companies, if they had been able to agree; and not only such as pertain to the interests of the companies, but also such as related to the public safety, *e. g.,* whether one or the other train should come to a full stop before entering on the crossing, whether a flagman should be employed, etc. In determining the amount of compensation to be awarded to the company, the track of which is crossed, the commissioners should not confine themselves to determining the value of the real estate actually taken and the damage occasioned by cutting the rails, but should allow all actual and direct damages occasioned to the contestant by the taking of the land for the purposes of, and resulting from its being used in the manner mentioned by the petitioner.

APPEAL by the several respondents above named, *i. e.,* by all the above named corporations other than the petitioner from an order made at Special Term, confirming the report of the commissioners in the above entitled matters.

*A. P. Laning,* for the appellant.

*George Bowen,* for the respondents.

TALCOTT, P. J.:

This is an appeal from the order of the Special Term in Niagara county, *confirming* the report of the commissioners, appointed at a Special Term of this court, sitting in the county of Erie, to ascertain and determine the points and manner of crossing the tracks of the several railroads named in the titles above, and the compensation to be made therefor, under subdivision 6 of the 28th section of the general railroad act. (Chap. 140, Laws of 1850.) The act provides that every corporation formed under the act shall, in addition to the powers conferred upon corporations in the 3d title of chap. 18 of the 1st part of the Revised Statutes, have power.   *   *   *   (Section 28, subdivision 6.)

" To cross, intersect, join and unite its railroad with any other railroad before constructed, at any point on its route, and upon the grounds of such other railroad company, with the necessary turn outs, sidings and switches, and other conveniences in further-

ance of the objects of its connections, and every company whose railroad is, or shall be hereafter intersected by any new railroad shall unite with the owners of such new railroad in forming such intersections and connections and grant the facilities aforesaid; and if the two corporations cannot agree upon the *amount of compensation to be made therefor, or the points and manner of such crossing and connections*, the same *shall be ascertained and determined* by commissioners, to be appointed by the court as is provided in this act in respect to acquiring title to real estate."

It is understood that the various tracks of railroads indicated in the title of the proceedings are all in the use and occupation of The New York Central and Hudson River Railroad, under various titles, and used indiscriminately in the business of the latter road, and the three cases above entitled were, by the consent of the respective parties, heard together as one case.

The commissioners assembled, pursuant to the order appointing them, heard testimony *pro* and *con*, and having viewed the premises made their three several reports, which were substantially transcripts, *mutatis mutandis*.

The petitioner, The Lockport and Buffalo Railway Company, moved for an order confirming the report of the commissioners, and from the order made at the Special Term confirming the said report, the respondents in said petitions severally named, in fact The New York Central and Hudson River Railroad Company appeal, claiming the right of appeal under section 18 of the said act of 1850.

The evidence is printed only in the case of The New York Central and Hudson River Railroad Company, and the report of the commissioners in that case will be taken and considered as the report of the commissioners in the matter, though we are not advised whether there were three separate tracks, nominally appertaining to the three separate railroads, but in fact, used and operated by The New York Central and Hudson River Railroad Company, or only one track, the crossing of which entered into the consideration of the commissioners, and the compensation for crossing which was determined by them.

The commissioners report that they have ascertained and do determine that the points of such crossing shall be " as fixed,

determined and located by the surveyed and located route of the petitioners' road, as set forth in said petition, and at the angle therein indicated and specified, and that such crossing be at the grade or level of the said New York Central and Hudson River Railroad Company, at that point, as now used and operated, and that the same be effected by the use and means of crossing plates or "frogs," in general use upon railroads in this country, to be put in and laid by and at the expense of the petitioners in this matter, the road bed of the petitioners' track to be graded from the outer limits of the land of, or used by, the said New York Central and Hudson River Railroad Company, to its road bed, in the usual manner so as nearly as may be to permit the free passage of water in the present ditches on either side of said last named company's track, the said petitioner to have the right so to construct, within the limits of its road, one track, and when, in its judgment, the business upon its road shall require it, one additional track. That the compensation to be paid by the petitioner for such crossing, and the facilities and conveniences in furtherance thereof be the sum of $300."

The said report contains the further additional statement:

"For the purpose of saving the legal rights of the parties, we do further report, that in arriving at the above compensation, and after hearing all the testimony in the case, we have determined that the term "compensation," as employed by the statute under which this proceeding is had, does not include the additional expenses of operating the contestant's road by reason of the crossing, or the damages by reason of delays, or to the rolling stock, which the contestant sought to prove in this proceeding, and we have allowed nothing therefor. The evidence upon these points was fully received, without objection, and considered by the commissioners, and will be found in the testimony annexed to this report."

It will be seen that the only points which the commissioners have determined as to the manner of crossing are, that the crossing shall be at grade and by the use of plates or "frogs" to be put in and laid at the expense of the petitioner. The commissioners seem to have based their determination upon the theory, that all which they were required to determine was the mere

mechanical means and appliances to be made use of in effecting the crossing.

This, we think, is too narrow a construction of the statute. There are other considerations which, we think, should enter into a determination of the *manner* of crossing between intersecting railroads which have an important bearing, not only upon the interests of the intersecting roads, but upon the question of the safety of persons and property to be transported across the intersection. Such, for instance, as which road has the right of way in the supposable case of two trains, one upon each of the intersecting roads meeting at the point of intersection. The determination of which train, in such circumstances, should have the precedence, could not with safety be left to the, perhaps, reckless zeal of the employes of the two railroads or to those of either, or to their discretion, which experience shows is not to be at all times wholly relied on. Some provision is required to guard against accidents, likely to result from an incautious exercise of such discretion. Such provisions would doubtless be made in any contract between the owners of two intersecting roads, if the two roads had been able to agree and settle by contract between the parties, and it is only in case the parties are unable to agree upon the terms and manner of crossing that the court is authorized to appoint commissioners to determine the matter. In the absence of any provisions of law upon the subject, save only the general rules relating to negligence, we think the commissioners, who are to determine the *manner of crossing*, are authorized to determine and award in regard to all such particulars respecting the *manner of crossing*, as would be ordinarily provided for by the contract between the railroad companies directly affected by the crossing, and such as appertain not only to the interests of those companies, but such as relate to the public safety, and that all such particulars should be considered and provided for by the commissioners appointed under the act of 1850 to determine the *manner of crossing*. For example, that one or the other train, on arriving at the point of intersection, or each, should come to a full stop before entering upon the crossing. At all events, such a rule should be applied to trains running out of schedule time. A flagman should be stationed at every such

intersection to give notice of danger to an approaching train, and various other provisions insuring, so far as possible, safety to the trains of the respective roads, and to the public might well, we think, be the subject of the determination of the commissioners as to the *manner of crossing;* and in confining their determination solely to the question of the mechanical means and appliances by which the crossing is to be accomplished, we think the commissioners have erred in the construction of the statute. Of course, we cannot undertake to determine in detail what particular provision should be made in regard to the manner of crossing which will tend to insure the greatest safety; but the means by which that is to be secured, in as great a measure as possible, must be left to the commissioners in view of all the circumstances of the case.

We also think the commissioners erred in the principle adopted by them as the basis of their determination as to the amount of compensation to be awarded to the contestants as for the damages to be sustained by them by such crossing. We do not mean that the remote or consequential damages which, it may be conjectured, will result from a depreciation of the traffic of the contestants' road from the construction and operation of the road of the petitioner, or even the damages from the conjectural delays to which the contestants' road may be subjected. For these are matters which may well be supposed to have been considered by the Legislature when it enacted the statute conferring the right to make such crossings and connections, independent of the consent of the company whose track it is proposed to cross. But the right to have and operate the defendant's road is a right of property, and so far as that is interfered with and directly rendered less valuable by the crossing of the petitioners' road in the manner determined upon, we do not see why the contestant is not entitled to such damages as will necessarily and directly result from the crossing. (*Sixth Ave. R. R.* v. *Kerr,* 72 N. Y., 330.) For instance, if any additional expenses, in operating the appellant's road, should be rendered necessary by the fact of the crossing.

We cannot tell how far the commissioners carried the rule of exclusion adopted by them, or whether they determined that any direct damages would be occasioned to the contestant by the crossing other

than by the occupation of so much of the contestant's real estate as was used for the crossing. But if it was apparent that, *in consequence of the crossing*, the contestant would necessarily be put to an increased expense in operating its road at the crossing, although we cannot see how it would be so, if nothing is required to be done except as reported, yet if the commissioners could determine that it would necessarily be so, we think the contestant was entitled to have the matter considered as a part of the compensation to which it was entitled, as much as though the contestant had been the owner of property on which was situated a mill or other manufactory, a part of which property had been taken under the right of *eminent domain*, and the taking, of the part so taken, would in some way have rendered necessary the substitution of other machinery, which could be operated only at a greater expense than that for which it was substituted.

We think, therefore, that the principle adopted by the commissioners, announced by them, was erroneous, because, as we understand it, it confined the compensation to be awarded to the contestant *to the value of the real estate actually taken*, and the cutting of its iron rails, without reference to the *actual* and *direct* damages to the contestant by the taking thereof for the purpose and to be used in the manner mentioned, and without being able to say that any such damages would be sustained by the contestant from the crossing in the manner specified in the report of the commissioners, we must reverse the order confirming the report of the commissioners, for the reason that, in our opinion, they adopted a wrong principle as the basis of their award of compensation, by which they were excluded from any consideration of the damages which might be occasioned to the contestant from the additional expense to which it might be necessarily subjected *at the crossing*, and *by reason thereof*. We were referred by the respondent on this subject to the case of the *Lake Shore and Mich. Southern Railway Co.* v. *The Cincinnati, etc., Railway Co.* (30 Ohio State Rep., 604, also reported in vol. 16 Am. Railway Rep.). That was a case which was decided upon the construction and effect of a statute of the State of Ohio, passed in 1860, entitled an "act to prevent collision on railroads," which statute, recognizing the right of one railroad to cross another at a common

grade, provides, amongst other things, that "the crossing shall be made and kept up, and watchmen maintained, at the joint expense of the companies owning the said tracks." It further requires all trains and engines passing over said tracks to come to a full stop not nearer than 200, nor more than 800, feet from the crossing, and not to attempt to cross until the signal is given, and it prescribes the order and precedence of trains and engines in making the crossings.    It was held, in that case, upon the express provisions and general intent of the statute of 1860, that in a proceeding under that statute by one corporation to appropriate a strip of land across the track of another, to be used in common by each as a railroad crossing, at a common grade, the owner of such track has no right to recover, as consequential damages, the additional expense of operating its road, caused by complying with the conditions of the act of 1860, which provided that the crossing should be made and kept up, and watchmen maintained, at the joint expense of the companies owning the tracks.    But it was also held, in that case, that in a proceeding under the statute to appropriate such right of way, the owner of the track proposed to be crossed is entitled to compensation for the property or interest therein actually appropriated, *and* for such consequential damages, not provided for by the act of 1860, as are the direct and approximate consequence of such appropriation.

We have no such or similar statute in this State.    The Ohio statute indicates proper precautions to prevent collisions, which experience has shown to be necessary to the public safety and to the interests of the intersecting roads.    And we think, in the absence of any legislative provisions relating to the subject, and in case of a failure of the companies whose roads intersect, to agree upon the *manner of crossing* and the compensation to be paid therefor, that it was considered that the power and duty to fix the terms upon which and the manner in which the crossing should be made would devolve upon the commissioners to be appointed by the court, and that the said commissioners have the power, and it is their duty, in such a case, to prescribe the use of all necessary precautions to prevent collisions at such railroad crossings.

Had the commissioners reported that a flagman or watchman should, at all times, be maintained at the crossing to signalize any

approaching train, and to indicate whether the crossing might be safely made, then, of course, if any part of the expense of maintaining such flagman or watchman, was to be paid by the contestant, the expense of operating its road would be so much enhanced by the crossing, and we think such an item would necessarily enter into any estimate of the compensation to be made to the contestant for damages which it sustained by reason of the crossing.

We do not undertake to intimate what precautions against collision should be provided for, nor to specify precisely what should be compensated for. Those matters are left by the Legislature to another and a different tribunal, but we think it is evident that the commissioners, in this case, have proceeded upon a misconception of their powers and duties under the statute; and have, therefore, adopted erroneous principles as the basis of their report.

The order of the Special Term of Niagara county, confirming the report of the commissioners in this matter is *reversed*, and the said report is set aside, and it is referred to any Special Term to be holden in the eighth judicial district, to appoint the same, or any other three persons, one of whom shall be a practical civil engineer, to ascertain and determine the points and manner of crossing, specified in the petition, and the amount of compensation to be made therefor, with ten dollars costs in one case, and the disbursements.

SMITH and HARDIN, JJ., concurred.

Ordered accordingly.